## Lutz *versus* The Commonwealth.

29 | 441
24 SC ¹180

An indictment for murder must expressly show that the party died of the hurt specially described therein.

An indictment charging a prisoner with having inflicted upon the deceased a mortal wound, specially described, of which said mortal wound he did languish, and languishing did live: "On which said 20th day of June in the year aforesaid, the said Richard O'Leary, in the county aforesaid, died," sufficiently charges that the deceased died of the mortal wound inflicted by the prisoner.

The verdict in criminal cases does not cure substantial defects in indictments, but it will obviate a defect arising from an omission to connect necessary and dependent members of the same sentence by the appropriate conjunction.

ERROR to the Oyer and Terminer of *Allegheny county*.

John Lutz was arraigned for the murder of Richard O'Leary, upon the following indictment:—

That John Lutz, late of the county aforesaid, yeoman, on the twenty-seventh day of June, in the year of our Lord one thousand eight hundred and fifty-six, at the county aforesaid, and within the jurisdiction of this court, with force and arms, in and upon one Richard O'Leary, in the peace of God and the said Commonwealth then and there being, feloniously, wilfully, and of his malice aforethought, did make an assault, and that he, the said John Lutz, then and there, with a certain knife, which he, the said John Lutz, in his right hand then and there had and held, the said Richard O'Leary in and upon the left side of the back of him, the said Richard O'Leary, then and there feloniously, wilfully, and of his malice aforethought, did strike, giving unto him, the said Richard O'Leary, then and there, with the said knife, by the stroke aforesaid, in manner aforesaid, in and upon the left side of the back of him, the said Richard O'Leary, one mortal wound, of the length of one inch and the depth of six inches, of which said mortal wound, he, the said Richard O'Leary, from the said twenty-seventh day of June, in the year aforesaid, at the county aforesaid, until the twenty-eighth day of the same month of June, in the year aforesaid, at the county aforesaid, did languish, and languishing did live; *on which said twenty-eighth day of June, in the year aforesaid, the said Richard O'Leary, in the county aforesaid, died;* and so the jurors aforesaid, upon their oaths and affirmations aforesaid, do say, that the said John Lutz, him, the said Richard O'Leary, in manner and form aforesaid, feloniously, wilfully, and of his malice aforethought, did kill and murder, contrary to the Act of Assembly in such cases made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania.

On the 31st of December, 1857, the jury found him guilty of murder in the first degree.

[Lutz v. The Commonwealth.]

A motion was made in arrest of judgment, "because there was no specific averment in the indictment that the deceased died of the wound inflicted."

This motion was overruled; and, on the 2d of February, 1858, the prisoner was sentenced to be hanged.

This writ was obtained, and the same matter was assigned here for error.

*M. Swartzwelder*, for the prisoner.—An indictment ought to be certain to every intent, without any intendment to the contrary: 1 *Ch. Cr. L.* 172; 1 *Arch. Cr. Pl.* 88. The charge must be sufficiently explicit to support itself: 1 *Ch. Cr.* 172; *Id.* 227, *et seq.*; 2 *Hawk. P. C.* 251; 2 *Hale* 178; 3 *Ch. Cr. L.* 735; Commonwealth *v.* Messenger, 1 *Binn.* 274; Spangler *v.* The Commonwealth, 3 *Id.* 533; Stewart *v.* Commonwealth, 4 *S. & R.* 194; Commonwealth *v.* Gillespie, 7 *S. & R.* 469; 8 *Watts* 536; 2 *Par.* 475.

*Second.* What is the law particularly as to the manner and certainty of this specific averment?

It is necessary to allege in fact that the party wounded died of that wound, thus, *de qua quidem plaga mortali idem J. S. languebat & languidus vixit usque talem diem anno supradicto, quo quidem die idem J. S. de plaga mortali prædicta obiit*: 2 *Hale* 186, also note 7 to pages 187–8. An indictment ought to expressly show that the party died of the hurt specially set forth; and it hath been resolved that an indictment setting forth that the defendant choked the deceased, *qua suffocatione obiit*, instead of *de qua suffocatione, &c.*, is bad: 2 *Hawk. Pl. C.* 251; 5 *Bac. Abr.* 70. It must be averred that the wound or bruise was *mortal*, and finally, the adequacy of the means to produce death must be further shown by *a direct averment that the party died of the stroke, and this cannot be supplied by any implication or intendment whatsoever:* 1 *Stark. Cr. Pl.* 93. In all cases the death by the means stated must be *positively alleged*, and *cannot be taken by implication*, and therefore when the means of death is alleged to be by any stroke, the indictment should proceed to aver that the prisoner thereby gave to the deceased *a mortal wound, whereof he died:* 1 *East P. C.* 342.

It is necessary, in all cases, that the death by the means stated should be positively alleged, for it cannot be taken by implication: 2 *Arch. Cr. P.* 207–2–3, (note); 3 *Chit. Cr. L.* 736; 1 *Leach* 112; *Kely.* 125; 4 *Brit. Cr. Ca.* 298.

Is the want of this averment cured by verdict? The authorities in this country are uniform to the contrary. The rule is broadly laid down in 1 *Ch. Cr. L.* 661–2. None of the statutes of jeofails extend to criminal cases: 1 *Stark. Cr. Pl.* 361; 2

[Lutz v. The Commonwealth.]

*Hawk.* 336; 20 *Pick.* 361; Com. v. Morse, 2 *Mass.* 130; Com. v. Henesey, 1 *Mass.* 137; Sharff v. Com., 2 *Binn.* 516; Com. v. Peas, 2 *Gratt.* 629. This has never been doubted until the late case of The Queen v. Waters, *Dennison's Cr. Ca.* 356. That has been in consequence of the latitude given by the stat. 7 Geo. IV. clause 6: see *Wh. C. L.* 216.

Nor is the defect cured by the concluding words "kill and murder:" Honeyman's Case, 2 *Dall.* 228; 5 *Bac. Ab.* 70.

Nor can the languishing clause in this indictment be stricken out as surplusage: Com. v. Bell, *Ad.* 171; *Wh. Prec. of Ind.*, last ed., 114, n. 8.

*Collier*, District Attorney, for the Commonwealth.

The opinion of the court was delivered by

WOODWARD, J.—This indictment is not artistically expressed. Its grammatical construction is open to criticism, and it trenches hard on those rules of certainty which obtain in criminal pleading.

Still, we feel it to be our duty to sustain it, and this, we think, can be done without violence to either language or law.

A stroke with a knife, and a mortal wound, are well charged, but it is objected that the indictment does not aver that the death ensued as a consequence of that wound. O'Leary might have died, it is said, of other violence, or of a supervening disease.

The rule undoubtedly is, that an indictment for murder must expressly show that the party died of the hurt specially described and set forth; but in construing indictments we are not, whilst avoiding intendments against the life of the prisoner, to fall into such extreme *astutia* as shall ignore the force and meaning of language.

This indictment is one long and complex sentence, from the beginning of the charging part to the end. After describing the mortal wound, it alleges, "*of which mortal wound*" he, the said Richard O'Leary, languished from the 27th to the 28th of June, and languishing did live, and it immediately adds, "on which said twenty-eighth day of June, in the year aforesaid, the said Richard O'Leary in the county aforesaid died."

Now if these words, "of which mortal wound," be carried down and connected with the averment of the death on the 28th, the objection vanishes. The averment would then be as distinct that he died of the mortal wound as it is that he languished of it. And why should not these words be carried down? They are in the same sentence, are separated from the averment of death only by a semicolon, and lack nothing but the conjunction *and* between the words "live" and "on" to make the sentence absolutely perfect in this regard.

Without the conjunction, however, there is the charge of the

[Lutz *v.* The Commonwealth.]

mortal wound,—of the languishing till the 28th, and of the death on the 28th, all in consecutive order, and in one unbroken sentence. That this was sufficient to convey to the general understanding the idea that O'Leary was murdered is admitted, and we think it sufficiently certain for an indictment. Being mortally wounded, it would have been proved as matter of defence that disease, accident, or other violence intervened to kill O'Leary, if the fact had been so. There was no such intervening cause, for there was no such proof. Yet he died. How? Of the mortal wound charged.

Let not this be called an argumentative conclusion; it is the very form and pressure of the complaint in the indictment. The nominatives, the conjunctions, and the punctuation might have been better, but the matter is all there, and in sufficient order to import the crime, and nothing else than the crime, of which the defendant was convicted.

But if the averment be ambiguous, it is aided by the verdict. A fault which would have been fatal on demurrer cannot be cured by verdict, and may be taken advantage of by motion in arrest of judgment, or by writ of error; but surely this conjunction would have been implied as against a general demurrer, and therefore it may be after verdict. The verdict in criminal cases does not cure substantial defects in the indictment, nor obviate the necessity for those formal and technical phrases which, sanctioned by immemorial usage, are not to be omitted in the description of the offence. But it may cure a defect no more important than the omission to connect necessary and dependent members of the same sentence by their appropriate copulatives. The jury could not have held the defendant responsible for the death of O'Leary, if they had not found that he died from the wound inflicted by the defendant, and of course they understood the death to be charged to that cause in the indictment. In other words, they read the indictment with the word "and" in the place I have indicated, and after verdict we are at liberty so to read it.

In the case of The Queen *v.* Sarah Waters, reported in 1 *Dennison's Crown Cases* 361, a much larger effect was given to a verdict. The prisoner was indicted for the murder of her child, by exposing it on a heap of ashes and dust in the open air, but it was not expressly averred that the child was of such tender years as to be unable to walk away and take care of herself, but, said Baron PARKE, that is to be implied, for if she had been sufficiently old or strong to do so, the death would not have arisen from the exposure by the prisoner. Here the omission was of an averment that was essential to the *corpus delicti*, and yet it was cured by verdict.

So, when we allow juries to convict of murder in the first degree under our statute, on a common law indictment, we give

[Lutz *v.* The Commonwealth.]

effect to the verdict beyond what it could have if it were construed as finding merely what is expressly averred.

On these two grounds—first, that the omissions of this indictment are immaterial, and next, that they are of a nature to be supplied and cured by the verdict, we affirm the judgment.

The formal conclusion of the indictment, "and so the jurors aforesaid say," &c., very clearly imputes the crime of murder, but we do not rely on it, for the elementary writers all agree that a charge substantially defective is not to be helped out by this formal conclusion. And it must indeed be so, for, in strictness of speech, the reference "and so" is to the charge as laid, and if that does not amount to murder, these customary words cannot make murder of it. To allege merely that a prisoner wounded a man, and then to conclude "and so" he killed and murdered him, would not be an indictment for murder.

Deriving, and seeking to derive, no aid from this formal conclusion, we hold, on the grounds indicated, that the prisoner was sufficiently indicted; and sad as it is to say it, the law must have its course.

The judgment is affirmed.